IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Civil No. 3:21-cv-393** |
| | ) | |
| APPROXIMATELY $10,130 IN UNITED STATES CURRENCY SEIZED FROM NICHOLAS SMITH ON MARCH 18, 2021 AT THE CHARLOTTE-DOUGLAS INTERNATIONAL AIRPORT | ) ) ) ) ) | |

## **VERIFIED COMPLAINT FOR FORFEITURE _IN REM_**

NOW COMES the United States of America, Plaintiff herein, by and through William T. Stetzer, Acting United States Attorney for the Western District of North Carolina, in a civil cause of forfeiture, and respectfully states the following:

## **INTRODUCTION**

1. This is a civil action _in rem_ against $10,130 in United States currency seized from Nicholas Smith ("Smith") on March 18, 2021 at the Charlotte-Douglas International Airport (the "Currency").

2. After noticing the smell of marijuana on a checked bag in the airport's baggage room, law enforcement approached Smith, who was standing in the gate area for his flight to Los Angeles with a co-traveler. Smith granted consent to search the checked bag and his carry-on, and the Currency—packaged in rubber-banded bundles and in denominations consistent with narcotics trafficking—was discovered. A drug detection dog later positively alerted to the odor of narcotics on/from the Currency after it was placed in an independent blind lineup.

3. Smith, a convicted felon with a lengthy history of drug-trafficking

1

charges/arrests, has no known legitimate income since 2016 and could not offer a plausible explanation of why he was traveling with roughly $10,000 or a plausible explanation that the Currency was derived from a legitimate source. Further, Smith's travel history of purchasing (or having third-parties purchase for him) last minute, one-way flights to/from Los Angeles (a known drug source location) is consistent with an individual involved in drug trafficking.

4.     Thus, the Currency is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

## NATURE OF THE ACTION

5.     Procedures for this action are mandated by 21 U.S.C. § 881, 18 U.S.C. § 983, 19 U.S.C. §§ 1602-1621, and, to the extent applicable, the Federal Rules of Civil Procedure and accompanying Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions.

6.     This Court has jurisdiction over this matter by virtue of 28 U.S.C. §§ 1345 and 1355. These statutes confer original jurisdiction to federal district courts of all civil actions, suits, or proceedings commenced by the United States and any action for the forfeiture of property incurred under any act of Congress.

7.     Venue is proper pursuant to 28 U.S.C. § 1395 because the Currency was seized in the Western District of North Carolina.

8.     The Currency has been seized and is now within the Western District of North Carolina.

9.     Based on the following facts, verified by Department of Homeland Security, Homeland Security Investigations ("HSI") Task Force Officer ("TFO") Stephen Brown, this action seeks the forfeiture of all right, title, and interest in the Currency.

## FACTS GIVING RISE TO FORFEITURE

### *The March 18, 2021 seizure*

10.     On March 18, 2021, Armani Smith and Nicholas Smith were traveling from Charlotte-Douglas International Airport to Los Angeles, California on an American Airlines flight.

11.     That day, while in the Charlotte airport baggage room,[1] TFO Brown noticed a suitcase emitting a moderate odor of marijuana. The suitcase's airline luggage tag indicated it belonged to Armani Smith and was destined for Los Angeles, California (a known drug-source location) on American Airlines flight 425.

12.     TFO Brown learned that Armani Smith had a co-traveler on the same reservation named Nicholas Smith. The suitcase was detained and moved to the boarding area of Gate A6 with TFO Brown and Special Agent Daniel Leal as they went to locate Armani Smith and Nicholas Smith.

13.     Upon entering the area, TFO Brown immediately observed two men standing next to each other, and one of them men, after seeing TFO Brown and the

---

[1] The baggage room is the area where checked baggage is sorted for flights prior to be sent out onto the ramp and loaded onto aircraft.

suitcase, signaled to his companion to look.

14.    TFO Brown and SA Leal approached the men who identified themselves as Armani Smith and Nicholas Smith.

15.    Smith was wearing a sweatshirt advertising THC gummies.

16.    TFO Brown interviewed Smith[2] and informed him that the suitcase smelled of marijuana. TFO Brown asked Smith he smoked marijuana around the suitcase.

17.    Smith stated that he packed the suitcase, he had smoked marijuana around the suitcase, and that "you can check it."

18.    TFO Brown further requested consent to search Smith's shoulder bag, which Smith granted.

19.    Inside the shoulder bag, TFO Brown located rubber-banded stacks of U.S. currency in multiple denominations.

 

---

[2] SA Leal interviewed Armani Smith.

20.     Smith stated the currency in his shoulder bag totaled $9,000.

21.     Smith stated that he had booked the airline reservation "yesterday" as a one-way. However, only a small amount of loose clothing was being transported in the suitcase, which did not appear consistent with cross-country travel.

22.     When asked about the source of the currency, Smith stated that the cash was connected to his savings and from a bank. When asked when he had withdrawn the money from a bank, Smith said that he had "been withdrawing it for a while."

23.     Smith did not provide any further specifics or indicate that he could provide documentation regarding his purported bank withdrawals (other than stating he could show Cash App transactions), but did admit to prior felony narcotics arrests.

24.     Smith was advised the Currency was being seized, provided with a seizure receipt, and had the seizure process explained to him. The suitcase was returned to American Airlines and Smith and Armani Smith departed.

25.     Thereafter, the Currency was placed into an independent lineup consisting of six boxes. K9 Rambo, who is a properly trained and certified drug detection canine, was deployed to conduct a sniff of the lineup. K9 Rambo positively alerted to the odor of narcotics in the box containing the Currency seized from Smith.

26.     The Currency, totaling $10,130, was transported to Loomis, where it was counted and deposited into an account established to hold seized funds.

27.     The Currency's packaging in rubber-band bundles and denominations (449 twenty-dollar bills, 1 fifty-dollar bill, and 11 hundred-dollar bills) are consistent

with cash involved in drug trafficking.

***Smith's lack of legitimate income and alleged source of the funds.***

28.     Based on his driver's license, Smith is believed to be a resident of South Carolina, and records obtained from the South Carolina Department of Employment and Workforce indicated that Smith's last reported legitimate income was in the third quarter of 2016 for $2,980.58.

29.     With his administrative claim, Smith asserted that he is the owner of multiple business, one of which sells used cars and the other selling French Bulldogs (that "command between $8,000 and $12,000 per puppy"), and that he "was on my way to buy/sell dogs requiring cash and was considering a deposit on a car if it was a very good deal."

30.     Smith attached documentation he contends support these assertions, consisting of pictures, registration certificates, a canine pregnancy test related to French Bulldogs, and some car titles. However, except for one document, labeled a bill of sale for a 2013 Buick Regal Premium from Prestigious Motorcars, LLC to Nicholas Smith for $3,400, none of the documents appear to show any connection to Smith or support his claim that the Currency represented earnings from legitimate businesses (nor really does one document connected to Smith merely purporting to show that he bought a car).

31.     Moreover, had Smith been traveling to Los Angeles with legitimately-earned currency to conduct legitimate business, the Government is not aware of (nor has Smith provided) any reason why Smith would not simply utilize the much safer

and commonplace alternative of depositing the Currency into a bank account upon earning it and then withdrawing it in California should he either buy a dog or car (assuming for argument's sake that transaction was legitimate but somehow required to be in cash).

**Smith's travel history**

32.    Smith indicated he purchased the airline ticket for the instant flight as a last minute, one way flight.

33.    Further, Smith's additional travel history is likewise inconsistent with someone making no known legitimate income, and instead, consistent with that of someone involved in drug trafficking—multiple one-way, last minute flights to and from California (commonplace among drug couriers/traffickers as narcotics cannot be easily transported on a plane without being noticed by airport security screening):

- On 05/31/2019, Smith attempted one-way travel to LAX, however, the ticket was cancelled as it was suspected by American Airlines to have been purchased by fraud. The purchaser was third party in Salt Lake City, UT.

- On 07/05/2019, one-way ticket from LAX to Phoenix purchased three days prior to departure by a third-party in Oakland, CA.

- On 03/19/2020, one-way ticket from LAX to CLT purchased the same day as departure.

- On 10/19/2020, one-way ticket from LAX to CLT purchased three days prior to departure.

- On 12/29/2020, one-way ticket from CLT-LAX purchased the same day as departure.

- On 03/30/2021, one-way ticket from LAX-CLT purchased the same day as departure.

- On 04/09/2021, one-way ticket from CLT-LAX purchased two days prior to departure.

***Smith's criminal history***

34.     Smith is a convicted felon (not drug-related) who has numerous felony arrests for possession of controlled substances with intent to distribute (2009); possession of cocaine and possession of heroin (2017); manufacturing, distribution, or possession with the intent to distribute, schedule I(b)&(c) narcotics, LSD, and schedule II cocaine, obtaining prescription drugs by fraud (misdemeanor), possession of a controlled substance with intent to distribute (2018); and selling/furnishing marijuana (2020).

## FIRST CLAIM FOR RELIEF – THE $10,130 IN CURRENCY
## (21 U.S.C § 881(a)(6))

35.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 34 above as if fully set forth herein.

36.     The $10,130 in Currency is subject to forfeiture pursuant to 21 U.S.C. § 881 (a)(6) because it constitutes money furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of 21 U.S.C. §§ 841 and/or 846, is proceeds traceable to such an exchange, and is money used or intended to be used to facilitate a violation of 21 U.S.C. §§ 841 and/or 846.

37.     Upon information and belief, the following persons may claim an interest in the Currency seized on March 18, 2021:

    Nicholas Smith
    271 Pinehurst Street
    Spartanburg, SC 29302

    *With courtesy copy to:*

Daniel M. Smith, Esq
San Diego Defenders
585 Third Avenue
Chula Vista, CA 91910

## CONCLUSION AND PRAYER FOR RELIEF

38.     By virtue of the foregoing, all right, title, and interest in the Currency

vested in the United States at the time of the commissions of the unlawful act giving

rise to forfeiture, 21 U.S.C. § 881(h), and has become and is forfeitable to the United

States.

WHEREFORE, the United States of America respectfully prays the Court that:

1.      A warrant for the arrest of the Currency be issued;

2.      Due notice be given to all parties to appear and show cause why the
        forfeiture should not be decreed;

3.      Judgment be entered declaring the Currency to be condemned and
        forfeited to the United States of America for disposition according to law;
        and

4.      The United States be granted such other and further relief as this Court
        may deem just and proper, together with the costs and disbursements of
        this action, including but not limited to the expenses of maintenance and
        protection of the Currency as required by 28 U.S.C. § 1921.

Respectfully submitted this 30th day of July, 2021.

WILLIAM T. STETZER
UNITED STATES ATTORNEY

/s/ Seth Johnson
J. Seth Johnson
NC Bar No. 53217
Assistant United States Attorney
Suite 1650, Carillon Building
227 West Trade Street
Charlotte, North Carolina 28202

9

Telephone: (704) 338-3159
Email: seth.johnson@usdoj.gov

## **VERIFICATION**

I declare under penalty of perjury that the factual information contained in the foregoing Complaint is true and correct according to the best of my knowledge, information, and belief.

Executed on the 29 day of July, 2021.

Task Force Officer Stephen G. Brown
Department of Homeland Security,
Homeland Security Investigations